IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL ROSADO, | : | CIVIL ACTION |
|     Petitioner, | : | |
| | : | |
|   v. | : | |
| | : | |
| GERALD ROZUM, et al., | : | NO. 06-4080 |
|     Respondents. | : | |

**REPORT AND RECOMMENDATION**

LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE

      Now pending before this court is a petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, by a petitioner currently incarcerated in the State Correctional Institution at Somerset, in Somerset, Pennsylvania. For the reasons which follow, it is recommended that the petition be DENIED and DISMISSED.

I.      PROCEDURAL HISTORY

      On May 7, 2002, petitioner entered into a guilty plea to one court of rape. On August 16, 2002, petitioner was sentenced to a term of six and one-half (6 ½) to eighteen (18) years imprisonment. Petitioner filed a post-sentence motion to modify sentence. On September 7, 2002, petitioner's sentence was modified to a term of six (6) to eighteen (18) years imprisonment. No direct appeal was filed.

      On March 13, 2003, petitioner filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, et seq. Petitioner claimed that he entered an unknowing and involuntary plea as a result of the ineffective assistance of counsel. The PCRA court held an

evidentiary hearing on June 9, 2003.  On August 7, 2003, the PCRA court denied the petition.

On July 12, 2004, petitioner filed a petition seeking to have his appellate rights reinstated because the court failed to inform petitioner of its denial of petitioner's PCRA petition. On July 23, 2004, the Superior Court reinstated petitioner's collateral appeal rights.  On August 23, 2004, petitioner filed a notice of appeal in Superior Court.  On July 28, 2005, the Superior Court affirmed the PCRA court's findings.  Petitioner then filed a request for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 27, 2005.

On September 8, 2006, petitioner filed the instant petition seeking habeas corpus relief, claiming[1]:

> (1)  Ineffective assistance of counsel for inducing petitioner to plead guilty but telling petitioner that pleading guilty was his only choice; and
>
> (2)  Ineffective assistance of counsel because counsel failed to adequately explain the guidelines for petitioner's sentence.

Respondent retort that petitioner is not entitled to federal habeas relief. Respondents contend that petitioner has failed to exhaust his claims in state court.  Respondents also contend that petitioner's claim is meritless.  This court finds that petitioner has exhausted his claim in state court, however, the claim is without merit and the petition must be dismissed. Hereafter we discuss the merits of petitioner's claim.

---

[1] Petitioner titles his claims as illegal sentencing claims. Petitioner then argues in the supporting memorandum of law that counsel was ineffective for inducing petitioner to plead guilty by telling petitioner it was his only option and not adequately explaining the sentencing guidelines to petitioner.  Petitioner claims that his sentence was illegal based on these two ineffective assistance claims.  As such, this court will treat these two claims as ineffective assistance of counsel claims.

II.     STANDARD OF REVIEW

Petitioner's claims are reviewed on the merits and subject to the following standard of review.

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for Writ of Habeas Corpus from a state court judgment bears a significant burden.  Section 104 of the AEDPA imparts a presumption of correctness to the state court's determination of factual issues - a presumption that petitioner can only rebut by clear and convincing evidence.  28 U.S.C. § 2254(e)(1) (1994).  The statute also grants significant deference to legal conclusions announced by the state court as follows:

> An application for a writ of habeas corpus on behalf of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court, in <u>Williams v. Taylor</u>, 529 U.S. 362, 404-05, 120 S. Ct. 1495 (2000), interpreted the standards established by the AEDPA regarding the deference to be accorded state court legal decisions, and more clearly defined the two-part analysis set forth in the statute.  Under the first part of the review, the federal habeas court must determine whether the state court decision was "contrary to" the "clearly established federal law,

as determined by the Supreme Court of the United States." As defined by Justice O'Connor, writing for the majority of the Court on this issue, a state court decision can be contrary to Supreme Court precedent in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. She explained, however, that this "contrary to" clause does not encompass the run-of-the-mill state court decisions "applying the correct legal rule from Supreme Court cases to the facts of the prisoner's case." Id. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1). It found that a state court decision can involve an unreasonable application of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407-08. The Court specified, however, that under this clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410.

III.   DISCUSSION OF MERITS

Petitioner's claims have been properly exhausted in the state courts and will now be addressed on the merits. Petitioner's two claims assert that petitioner's counsel failed to

4

provide effective assistance.

When reviewing claims of ineffective assistance of counsel, this court must view the totality of the evidence before the trial court and determine whether the petitioner has shown that the decision reached is reasonably likely to have been different, absent the alleged ineffectiveness of counsel. Strickland v. Washington, 466 U.S. 668, 695, 104 S. Ct. 2052, reh'g denied, 467 U.S. 1267, 104 S. Ct. 3562 (1984). The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel. U.S. Const., amend. VI. The Supreme Court has set forth a two-prong test - both parts of which must be satisfied - by which claims alleging counsel's ineffectiveness are adjudged. Id. at 668. First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." Id. The Supreme Court has explained that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 76 S. Ct. 158, 163-64 (1955)).

A convicted defendant asserting ineffective assistance must therefore identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment. Id. at 690. Then the reviewing court must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent

5

assistance." Id.  Under Pennsylvania law, counsel is not ineffective for failing to raise baseless or frivolous issues.  Commonwealth v. Wilson, 393 A.2d 1141, 1143 (Pa. 1978).

Second, the petitioner must demonstrate that his counsel's deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different."  Id. at 694.  A reviewing court need not determine whether counsel's performance was deficient before considering whether the petitioner suffered any prejudice as a result of the alleged deficiency.  If it is easier to dispose of an ineffectiveness claim for lack of the requisite prejudice, that course should be followed.  Id. at 697.

In the case at bar, petitioner's first claim is that plea counsel provided ineffective assistance when counsel told petitioner he had no other option than to plead guilty.  Petitioner asserts that counsel told petitioner that based on the evidence petitioner's only option was to plead guilty.  Petitioner claims that his guilty plea was involuntary and unknowing because counsel did not explore the facts of the case and present petitioner with alternative defenses.  Petitioner claims that since his guilty plea was involuntary and unknowing petitioner's sentence was an abuse of the Judge's discretion.  The PCRA court reviewed this claim and found that it was meritless.  We also find no merit to this claim.

At the evidentiary hearing petitioner's plea counsel testified to the PCRA court that prior to receiving the DNA results that confirmed that petitioner's DNA matched that of a sample found on the victim, petitioner had maintained that he was innocent. (Notes of Testimony of PCRA Hearing, June 9, 2003 [hereinafter "N.T."], page 43).  Plea counsel explained that prior to receiving the DNA test results counsel explained to petitioner that the

6

results may help exonerate petitioner if they do not match. (N.T.46). Plea counsel testified that during that time he discussed various defenses with petitioner. (N.T.44). Plea counsel then explained that after the results showed that petitioner's DNA was found on the victim, petitioner broke down crying, and said "it was all a big mistake" and it is "one mistake that's ruining my life." (N.T.48). Plea counsel also testified that petitioner never discussed pleading guilty until after the DNA results. (N.T.51). Plea counsel said that he never advised petitioner that pleading guilty was his only option, and that the decision to plead guilty was "a spontaneous decision on [petitioner's] part." (N.T.51, 54).

At petitioner's guilty plea hearing, when asked by the court if petitioner engaged in a sexual act with the victim by force or compulsion, petitioner agreed. (Notes of Guilty Plea of May 7, 2002 [herinafter "G.P."], page 10). Petitioner agreed he knew and understood the elements of rape and that his conduct fit those elements. (G.P.10-11). Petitioner also told the court that he discussed the case with plea counsel and he was satisfied with plea counsel representation, and petitioner believed it was in his best interest to plead guilty. (G.P.12-13). The PCRA court found that petitioner's guilty plea was voluntary and that plea counsel did not induce petitioner to plead guilty. It can not be found that the state court ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, we must the habeas petition as to this claim.

Petitioner's second claim is that petitioner's counsel during his sentencing ("sentencing counsel") was ineffective for failing to adequately explain the effect of the sentencing guideline ranges that were presented to petitioner. Petitioner claims that his guilty

plea was involuntary and unknowing because counsel did not explain the sentencing ranges to petitioner.  The PCRA court reviewed this claim and found it meritless.  We also find no merit to this claim.

      The PCRA court held an evidentiary hearing.  Both plea counsel and sentencing counsel testified at the hearing.  Petitioner had new counsel at sentencing because petitioner's plea counsel left the public defender's office, due to medical reasons, prior to petitioner's sentencing.  Plea counsel testified that he discussed the sentencing guidelines with petitioner.  (N.T.52).  Plea counsel also stated that he never estimated when petitioner would be eligible for parole.  (N.T.53).  Plea counsel explained that he explained the maximum penalties to petitioner and that petitioner did not have any questions.  (N.T.53).  Sentencing counsel then testified that he reviewed the sentencing guidelines with petitioner.  (Notes of Testimony of PCRA Hearing, June 13, 2003 [herinafter "N.T., Vol.II"], page 4.)  Sentencing counsel also testified that he sent petitioner a copy of the pre-sentence report prepared by the Northampton County Adult Probation Department prior to sentencing. (N.T., Vol.II, 4).

      The PCRA court also noted that at the time of petitioner's guilty plea , the court stated, "[F]or the crime of rape as a felony in the first degree, I could sentence you to a maximum of 20 years' incarceration and a $25,000 fine; do you understand that?" (G.P.8).  Petitioner answered that he did.  (G.P.8).  Petitioner also stated that he had a chance to discuss sentencing with his counsel.  (G.P.8.)  The PCRA court found that based on the above testimony that plea counsel and sentencing counsel both explained the guideline sentencing ranges with petitioner and petitioner understood them.  The court found counsel was not ineffective.  We agree, and as such we must dismiss the habeas petition as to this claim and in its entirety.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this _____ day of March, 2007, IT IS RESPECTFULLY RECOMMENDED that the petition for Writ of Habeas Corpus be DENIED AND DISMISSED.

It is also RECOMMENDED that a certificate of appealability not be granted.

BY THE COURT:


 /S LINDA K. CARACAPPA

LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE